Ms. Crocker? Thank you, Your Honors, and good morning. May it please the Court, my name is Catherine Mims Crocker, and I represent the appellant, Mr. Jolon Carthorne, Sr. I want to make three important points today. First, Mr. Carthorne will sit in prison for at least seven and a half years longer than he should, solely because his attorney failed to offer a simple objection to the career offender enhancement. Second, everyone agrees about that. This court on direct appeal made clear that it would have reversed for resentencing without the career offender enhancement had Mr. Carthorne's attorney only offered a simple objection. The district court indicated that was sufficient for Strickland's prejudice prong, and the government does not contest this point. The time for this court to rectify this error is today on collateral review for ineffective assistance of counsel. And third, the district court applied the wrong legal standard to Strickland's performance prong by conflating it with plain error review. Under the correct standard, counsel provided ineffective assistance because the record shows that no reasonable strategic decision motivated his failure to object. All of these points make this case truly extraordinary and show that granting relief to Mr. Carthorne in this case would not open the proverbial floodgates to other ineffective assistance claims. Well, why is that so? Because you often have a failure, routinely have a failure to preserve objections, right? Yes, Your Honor. And there wasn't Supreme Court law on this point at the time, was there? There was not Supreme Court law on this particular point at this time, Your Honor. There was no Supreme Court case law that could have supported an objection that the attorney overlooked. But as I say, there are often meritorious objections that are not made, and we routinely say they're waived, both from the government and on the defendant's side. Yes, Your Honor. And often the case will be that there is a reasonable strategic reason. Yes, but even if there isn't, you know, there's no reason at all that it was error, but we say, well, that's too bad for habeas. Well, Your Honor, there are three aspects of the failure to object in this case that make it an ineffective assistance. One was that this was a particularly important sentencing issue. The career offender enhancement ended up adding at least 7 1⁄2 years to the top of the correct guidelines range, but it could have added over 17 years. It could have more than doubled Mr. Carthorne's sentence. The second is that there was a significant amount of support that could have and should have supported the attorney's argument. And the third is that, in this case, there's no dispute about prejudice. We know from this court's previous opinion and from the district court's decision below that Mr. Carthorne has established prejudice, and that... What about the fact that the district court below essentially interrupted counsel's argument and said that it was, quote, without merit? How does that weigh into your argument? Your Honor, counsel effectively conceded this point by agreeing with the district court that the argument would be without merit. That certainly seems to be where his argument was going anyway, but the fact that the district court specifically asked about what he should make of the conviction, the Virginia conviction, gave counsel even more of an opportunity to object and, if anything, shows that he was certainly ineffective for failing to do so. The district court also erred by holding that controlling authority is required in this regard, and the government does not contest that point. We want to be clear that Mr. Carthorne's attorney wasn't required to make a perfect objection. He wasn't required, you know, to have a fully formed appellate brief written at the time of the sentencing. All he was required to do was to make some objection to preserve the issue for appeal. And how would he have done that? What would you have had him say? Well, Your Honor, I think there's many different ways that he could have, but he could have said something as simple as, you know, we object to application of the career offender enhancement because the Virginia conviction did not constitute a crime of violence. And I believe that that would have been sufficient. That's a pretty full objection. That might be the objection you make, but people often do not make objections like that, and I, too, was sort of toying with what could, because you make that point in your brief, you don't have to make, you know, you don't have to make a brief about it, but I think you are expecting him to come out with a rationale. Well, you just say, if he just said, I object, would that be sufficient? Let me put it that way. Your Honor, I don't know whether that would have been sufficient, but I think that he could have simply said, we object under the reasoning of United States v. White. He could have, you know, there are numerous ways that he could have objected. You're saying competent counsel would have known of our decision in White? I do think that competent counsel should have known of the decision in White, but I don't even think that White was necessary here, Your Honor, in order to raise this objection. The Supreme Court's decisions in James v. Gay and Sykes between 2007 and 2011 illuminated the meaning of the residual clause and would have provided support for Mr. Carthorne's defense, the fact that he didn't raise any objection. The record also makes clear that he failed to understand or research the correct issue, the issue that caused this Court to hold that Mr. Carthorne was not a career offender on direct appeal. He said that he would have liked to have been lucky to find a case that says spitting on an officer is not an assault. But the question was not whether spitting on an officer is an assault. Of course it is. That was settled by the fact of the Virginia conviction itself. So what you're saying then is that he didn't even understand the inquiry that he was required to make. Yes, Your Honor. Yes, Your Honor. And that provides an independent basis for finding that he was ineffective. He didn't – the record – Well, he understood the question one way, and you're saying that the Court's question to him was directed at something else. But the Court just said, what do I make of this prior – he directed him to the state conviction. So I'm not sure it was unrealistic for him to start talking about the state conviction. I mean, it's not good practice, but I think you can see that maybe he thought that was the District Court's question was about the state conviction. Well, to clarify, I'm not trying to say that he misunderstood the Court's question. He clearly understood the Court's question to be asking about the crime of violence enhancement and whether it should be correctly applied. But he seemed to think, based on the record, that the question for whether the crime of violence enhancement applied was whether the victim was actually for an assault. And that's simply not the correct inquiry in order to determine whether the crime of violence enhancement applies. That question is whether the elements of the Virginia conviction meet the definition of crime of violence in the federal system. But you're saying before he even arrived at the sentencing hearing, he was woefully unprepared to even present his arguments to the PSR or to the Court's inquiries because he didn't do sufficient work to prepare for it. Yes, Your Honor. The record shows that at pages 43 to 44, which is where he said that any objection to the career offender enhancement would have been without merit and that he would rather argue that Mr. Carthorn was just a fool. But with respect, the choice to argue that Mr. Carthorn was just a fool landed Mr. Carthorn in prison for 25 years, 7 1⁄2 years longer than under the top of the correct guidelines range. And that was an effective assistance. Let me ask you, you know, the sort of the prime legal issue that this case presents is the interplay between habeas relief and a finding that there was not plain error. And how would you formulate a rule going forward? Because it is hard to see the space between those two things. Well, Your Honor, I think at the heart of this distinction is the fact that the judge's job is to judge and the advocate's job is to advocate. And those are two fundamentally different duties. Under plain error review, an error will be reversed only if it's clear or obvious rather than subject to reasonable dispute. And that's what the Supreme Court said in the Puckett decision. But the duty of zealous advocacy requires to bring, requires attorneys to bring certain reasonable disputes to the Court's attention. So you're saying that the Court, that the attorney needs to be more knowledgeable than the Court needs to be? Your Honor, the attorney needs to do a sufficient investigation to fulfill his duty of zealously advocating for the interests of his client. And that requires him to thoroughly research the law, especially in important areas, which the career offender enhancement certainly was in this case and I believe will be in essentially all cases where it might apply. It seems to me that all that rhetoric is sort of at odds with what the Supreme Court has told us about habeas review. And that's where I'm having difficulty. Well, Your Honor, because this is an ineffective assistance claim, litigants... You're right. That's the only way, really, or almost the only way that you get any kind of habeas review. Right. Because you're out at the start without that claim. Yes, Your Honor. But even with that claim, there are all manner of things that I think you, I, and maybe everybody in the Courtroom would agree were, in fact, ineffective assistance in real life, but do not constitute ineffective assistance at counsel. Yes, Your Honor. The Strickland bar is not meant to be particularly onerous, but it does require objectively reasonable performance. And we simply don't see that in this case for the reasons that I've described. The Supreme Court in Massaro said that litigants should not face disincentives not to raise their ineffective assistance claims on collateral review, that they shouldn't essentially be encouraged to have to raise them on direct appeal when the record hasn't been fully, it's not fully mature at that point. Well, what does that have to do with this case? This, the district court's decision below effectively encourages litigants to bring ineffective assistance claims on direct appeal because if the court can find no plain error and therefore foreclose ineffective assistance relief without even considering the circumstances of the representation, that will incentivize litigants bringing those claims earlier than they should under the Supreme Court's decision in Massaro and a host of this Court's precedent. So what do you think is the Supreme Court decision finding ineffective assistance of counsel that is most helpful to you factually in this case? In other words, the same kind of error, lawyer error, lawyer ineffectiveness. That's a good question, Your Honor. In Glover, obviously it's a good question. In Glover, in Glover, the Supreme Court said that how important, first of all, they said that any error that leads to increased prison time is an error of significance to the Sixth Amendment. And also that the amount of increase in prison time can relate to whether it's ineffective assistance under the performance prong for the attorney not to raise it. But there are three Supreme Court cases where the attorney's ineffective assistance was premised on a mistake of law, as we believe that this case was. Those are Kimmelman v. Morrison, Williams v. Taylor, and Hinton v. Alabama. In Hinton v. Alabama, the Court said that the attorney's failure to understand and research a fundamental point of law... Well, with this mistake of law, you're obviously, well, I don't know if obviously, but you are more familiar with those cases as you stand there than I am right now. But is the mistake of law like the mistake of law here in that there is no binding precedent on the issue? Your Honor, in each of those cases, the Supreme Court didn't analyze whether the mistake of law was essentially reasonable. Where the ineffective assistance, so I don't know the answer to that question. You just said ipso facto, any mistake of law gives you an ineffective assistance claim? It did not say ipso facto. That would be a surprise to me. It did not purport to lay down a binding rule for all future cases. But in each of those cases, the ineffective assistance was premised on a mistake of law. And the Court didn't essentially ask whether it was a reasonable mistake of law. It assumed that that was not the mistake of law in and of itself was necessarily an effective assistance, but where that led to the attorney. One case, he failed to request any pretrial discovery because he didn't think that it was going to present and therefore didn't ask for any discovery. The Court said that that was ineffective because it turned on a mistake of law. I also want to talk a little bit about how the cases that the government relies on were not controlling and are distinguishable. There's plenty of case law that supported the argument at the time of the sentencing hearing that under the force and the residual clause of the career offender enhancement, a conviction for assault and battery does not constitute a crime of violence. The government points to out-of-circuit decisions that themselves relied on the facts of cases from other states to show that the offense in question satisfied the residual clause in the ordinary case. But that is not necessarily true of Virginia, as Mr. Carthorne's conviction for simply spitting shows. And the unpublished Fourth Circuit cases came down before this Court's decision in White, which illuminated the meaning of a very similar force clause, and they did not distinguish between the force and the residual clauses, except to the extent that Alston expressly relied on the force clause. And therefore, there's a good argument that they were all superseded by White. I think your time has expired. You can go on. I'm sorry, Your Honor. That's okay. No, that's all right. I'll save the rest of my argument for rebuttal. When you're sitting down, maybe you can look at those three Supreme Court cases and tell me a little bit more about what the error was there. Yes, Your Honor. Thank you very much. Thank you. Can we hear from the government? May it please the Court. Good morning, Your Honors. My name is Anand Ramaswamy, and I represent the government as the appellee in this matter. The appellant's trial counsel was not ineffective where, at the time of sentencing, not only was the weight of the authority that assault and battery on a police officer was a crime of violence. The unanimity of authority said that. In every case to consider that crime, it was considered a crime of violence. Now, the White case, which is central to the appellant's argument that an objection was warranted, was insufficient to have been the basis of an objection here. Why was it insufficient? Well, the White case addressed only assault and battery. Right, but it made the point that any touching could be an assault. The White case, I'm sorry, Your Honor. No. So I'm saying, why wouldn't counsel be reasonably expected to make that argument in the context of a police officer? I mean, what about White suggested that it was limited to a domestic violence context or any other particular context? This court in White stated that the status of the victims as domestic partners was neither an element nor determinative in the court's analysis. But in the cases that examined assault and battery on a law enforcement officer, specifically the Tenth Circuit, Williams had stated, assault and battery committed on a peace officer is not equivalent to the same act committed against any other person. Right, but that wasn't precedential authority. Why wouldn't competent counsel have been expected to make the argument that it wasn't a crime of violence, given the fact that the Virginia, that this circuit, had already had precedent saying that assault did not qualify? Two things, Your Honor. First, the White case only dealt with the use of force clause, not the residual clause. There was none in the context of what the domestic violence prohibition against firearm possession. But here, in the cases that do analyze it, it has been a residual clause. And I would point the court's attention specifically to the First Circuit in Dancy. Just three months before the sentencing of the defendant, appellant, the same argument is raised, that assault and battery cannot suffice as a use of force type crime of violence. Okay, so it seems to me that what you're doing is a backdoor approach to saying that if other to your client's position, then you don't have to make the argument, even though there's no precedential authority in your circuit for that proposition. Well, I would... It seems to me that you're almost backpedaling to the plain error rule. In other words, if other circuits say it, well then, that doesn't mean that in this circuit it's a problem. It seems to me you're kind of going in a circle there. I would state that looking at what an objectively reasonable attorney would have done, and looking at the state of the law at the time the appellant was sentenced, and there being no authority that assault and battery in a police officer was anything but a crime of violence, there was simply no reason to object. Does it make a difference here that he didn't even know what he was supposed to be thinking about? The fact that he didn't understand the inquiry of a crime of violence, as opposed to he was concerned about the legitimacy of the conviction, and whether the conviction was a good conviction. So he didn't even know what game he was playing. So does that factor into our analysis at all? I would... I was going to address that colloquially at a later point, but I'll address it now. It starts in the joint appendix at page 43. That colloquy, and as we state in our brief, is not focused on the career offender enhancement. That is, it divorces it from the context of its timing. That was past the point of objections. The pre-sentence report had already been accepted. And it immediately follows counsel's argument for a downward variance. So the district court poses two questions. What's he to make of the gang membership and the spitting in the face of the police officer conduct? Now, in this court, when it analyzed Carthorne on direct appeal correctly, looked only at battery of a police officer, not the underlying conduct of spitting. Right, but it seems to me that counsel in this case didn't even understand the fact of whether this was an assault under Virginia law was not the issue. He seemed to be concerned about the legitimacy of the conviction rather than whether the conviction qualified as a crime of violence. Your Honor, I would say here two things. Counsel's answering the question he was asked. What am I to make of this conduct? I gather your argument is that he isn't addressing, what he's addressing now is mercy, downward departure. And he's trying to show that this underlying crime wasn't really much of a crime. Or at least he's looked for authority to establish that. But he's not addressing the question of whether, in fact, it's a crime of violence. Is that your position? I would agree with that in part. I thought the way you were placing it in context, that's what you were getting at. Yes, Your Honor. At this point, when counsel is asking for a downward variance, the court's asking what am I to make of this. Some crimes, I would argue, are understandable on their face, whether it's for economic motives, selling drugs, or stealing, or even an assault on an officer that is in the course of, say, evading the officer. But the court's asking about the conduct which is in the pre-sentence report, an unprovoked assault. The appellant approaches an officer and spits in his face. And I would state it's addressed more to the understanding, why does someone do that? What's the reason for someone to do that? And ultimately, counsel's answer was, he's just a fool at that time. Right, but that didn't preclude him from making a separate argument. I understand what you're saying, that during this qualify, that wasn't what this qualify was about. It wasn't about the modified periodical approach and the elements of the crime and lining them up to determine whether there was a crime of violence. I agree with you. But that wasn't the only thing that counsel was permitted to say. I mean, the counsel certainly could have said, my guy's a fool for spitting at a police officer, and almost everybody in this room would agree with that. But that didn't stop him saying, notwithstanding the irrational behavior in this case, nonetheless, it doesn't qualify as a crime of violence. Let's assume that that was the point of the question. Certainly you agree that under existing case law, going from Taylor on, the counsel should have known that there is an inquiry to be made under the career offender designation as to whether the predicate offenses qualify as crimes of violence. And this gentleman didn't seem to even know about that. We don't hear anything about that, not just in his response to Judge Osteen's remark, but anywhere in the record we don't see anything that suggests he even knew about the inquiry that counsel routinely made in terms of predicate offenses. Your Honor, I would ask that the court look at what counsel did say. He wasn't asked the career offender predicate question, but he did address some portions of that. Right, but he's got to come up with his own ideas. It's not just responding to the court. Are you saying that you can be effective if you just answer the court's questions and there is a slam dunk argument you could make, but just because the court didn't talk about it, you don't have to? Of course not. Well, no, but that's not this case, Your Honor, because it's not a slam dunk argument. I would ask the court to look at what counsel did say. He doesn't use the use of force term, but he does address it. He says he'd like to argue that the assault did not involve striking, injury, or violence. He's covering the use of force components. Not under the analysis of whether it constitutes a predicate offense for purposes of the career offender enhancement. Don't you admit he totally missed the boat, never got on the boat? Well, that's because he didn't have a ticket. He wasn't asked that question, Your Honor. He doesn't have to be asked that question. It's his job to represent his client. How was it objectively reasonable for him to stand there and not object to the career offender enhancement when that's the main challenge for any defendant in this situation? I guess the question would be, is counsel bound to object to the career offender enhancement when there is no arguable legal basis for it simply because it enhances the sentence? And I want to go back to that. Were you saying earlier that there was no arguable legal basis for it because there was no precedent? There was no case published or unpublished. That's the best possible situation for a criminal defense attorney. If there's no precedent, it's a good opportunity to try to make some good precedent and help your client. But you had Virginia law, didn't you, as to what constitutes an assault? Virginia law, Your Honor, which only considered assault and battery and not what are additional elements that the person knows it's a police officer who is engaged in the officer's duties. So it's a different offense. If this reached everything in which a common law assault was a component of an assault that had additional elements, then it's, I would argue, reading white to be much broader than white was. There was no indication on these facts to have raised a residual, an argument that white applied in this case. Can I ask you a separate question? Is there any indication in the record that counsel had some strategic reason for not objecting to the career offender enhancement? Did counsel submit an affidavit or declaration? There's no affidavit in this, Your Honor. So there's no indication in the record that there was a strategic reason or not for this. I thought you didn't even make that argument. Do you make an argument that there is a strategic reason for this? I would argue that at the state of the law at the time of sentencing, under the Strickland standard, an objection, an objectively reasonable attorney would have no basis to amount to such an objection. Now, we don't know. There was no affidavit in the 2255, so it's not on the record whether he understood it or not. The government's argument is, regardless, if he knew of the white case, would argue it did not apply here on the facts as they were. This Court's decision, I would, this Court's decision in Carthorn, there was no circuit split at the time. The timing of this, eight months after the sentencing, we had the Seventh Circuit be the first to argue that salt and battery on a police officer in the ordinary case is not a crime of violence under the residual clause. And that created a circuit split. There was none existing at this time. So the counsel's knowledge of white is not determinative here. So in this 2255, this is, the government was the party below. Did you argue in the district court? Yes, Your Honor. Did you personally? Well, the government can get together the affidavit from defense counsel if it wishes, right? It could, Your Honor. Right. Okay. Well, I would say if we're looking for a reason, an affidavit from counsel in this case as to whether or not he was aware of white, what we're saying is we've heard your answer but would like to see a written word. That it's the type of hindsight review that Strickland prohibits. Because our argument here is whether or not he knew of white. In this case, it didn't matter because every time a court has considered this offense, it has found it to be a crime of violence. Only afterwards in Hampton was it not. I want to address one other thing if I have time. The magistrate court, I would argue, did not use a different standard than the Strickland standard. Nowhere did the magistrate state that plain error affirmance forecloses ineffective assistance claims. What the district court's adopted opinion states is the petitioner cannot overcome Strickland's high bar in this instance, essentially for the same reasons that the Fourth Circuit found no plain or obvious error on direct appeal. So conceptually, then, what are you saying is the space between plain error and ineffective assistance? How much room is there for an ineffective assistance case when there is no plain error? I think it's going to depend on the facts of the case you're on. Well, can you hypothesize a case for us? Let me point to some of the cases which counsel points out where it should have been known. Oh, no, I'm asking you for a case that would have been found to be no plain error yet be ineffective assistance. Give us an example, if you would. Well, if, for instance, the Hampton case had been decided prior to this defendant's sentencing, and there was an existing circuit split, so there is some authority. Or if within this circuit or before the Supreme Court there was pending the same type of argument, so that counsel could say, this has not yet been ruled on, but it may affect my client. So it would ask that this, I'll make the objection because the issue was pending. I'm just trying to understand. You would say that even then, counsel had not committed plain error, but that there would be a basis for a habeas claim. Is that what you're saying? That's the case we're looking for. Not a case, but a factual situation. It's hard to envision that. I guess. If it's not this case. I don't know if I can come up with an example of where that fits, where there is plain error affirmance, but it doesn't leave room for ineffective assistance of counsel claims. It did come up in the Greeno case with an affirmance and was found to be ineffective because there were arguments there was an existing circuit split in that case, and counsel did not raise it. In this case, it's an omission. I'm sorry. In which case is this? There was a finding that there was no plain error, and yet there was a valid habeas claim? There was plain error in the Greeno case. There was plain error? Yes, Your Honor. I'm sorry if I misunderstood. No, no, no. I probably misunderstood you. There was plain error, and then there was ineffective assistance? Is that what you're saying? Yes, Your Honor, ultimately. So we're looking at a case where there is not one, but there is the other. Well, here I would state that the district court did not announce a new standard. It's a conclusion of law, not a legal standard. But based on these facts and the common concept of obviousness. So what you're saying at the bottom line, though, is that it doesn't make any difference that this lawyer didn't even know which door to open. He didn't know that the categorical approach was in play. He didn't know that the crime of violence analysis was in play. He didn't even know where he should be heading. That he is saved by the fact that other circuits have resolved the case against his client. You see what's bothering me about this case? This lawyer didn't even begin to understand what he needed to do. And what you're saying is it doesn't matter because even if he had understood what he needed to do, there still was another Tenth Circuit case that could have been used against his position had he known what his position should have been. Well, I'd argue that the record doesn't show he absolutely didn't know. Well, he didn't say a word about what constitutes the crime of violence and the determination of it. And that determines whether something's a predicate offense, does it not? Yes, Your Honor. But consider counsel's argument then. Right, but so tell me. So he's saved under your analysis the fact he doesn't even know that he's got to head north and just head south. He's saved by the fact that out east there's a case that doesn't help where he should be going. Okay? So is that what you're saying? That even though he doesn't even know where he should be going, it doesn't really matter because there was a case contrary to where he should have been going. No, Your Honor. I would argue on the facts of this particular case and at the time of his conduct that those cases that were available, every case that considered this, considered it to be a crime of violence. So you're saying even if he did know what he should have been doing, it wouldn't have mattered? Is that what you're saying? Are you raising a prejudice? Are you injecting prejudice into your analysis? And that's what it seems to me you're doing is you're saying, well, this guy didn't even know which direction to head in, but it doesn't really matter because he would have lost on the issue anyway because there's a Tenth Circuit case out there that was against him. You say he had no basis to raise such an objection. There was no basis at the time of this sentence that there was a change in the law. So judging under the Strickland standard at the time of sentencing, there simply was no basis to have mounted this objection. No good faith. And if we're going to encourage, just because it increases, I'm about to go over my time, a basis objection, one without merit, one without any legal support, then we're going to ask, not just for career offender but every specific offense characteristic, the counsel make an objection because someday the law might change in his favor, and if not, that would be considered error. Can I ask you just one last question? When you're articulating what is at issue here, it's almost as if you're making an argument that there is no plain error. Just bear with me for a second. And so the government has gone out of its way to say no, the two standards, or to disavow any reliance on the fact that the two standards would be the same, and I just wonder why you're doing that. Because we're looking at different time periods, Your Honor. Under the plain error analysis, you look at the law at the time after appeal when there was a circuit split, and this Court's opinion mentions that split, I believe, four times. There was no circuit split. The Strickland standard looks at the conduct at the time of counsel's conduct at the time of sentencing. So it's two different things. So you're not claiming that the panel was wrong in saying there was error. No, and I'm not looking to re-litigate. Did the government make the argument at the time that the panel was wrong? No, Your Honor. And it did. No, no, that's not. I was, Your Honor. And you didn't make any argument that there was no error. I argued plain error, Your Honor. Right. You didn't make an argument there was no error. No, Your Honor, no. Okay. Thank you. Thank you, Your Honor. Ms. Crocker, do you have some rebuttal? Thank you, Your Honors. I'd like to address a few points that Your Honors raised questions about earlier and respond to a few points that counsel raised. And, Ms. Crocker, if you could also address the suggestion from the government. Government seems to be saying that it doesn't matter that he didn't know which direction he should be heading in if he wouldn't have been successful because there was another circuit case out there from another circuit that would have gone against him. If you could address that as one of your considerations here. Yes, Your Honor. I think that that relates to the question that you asked before about whether the attorney is expected to know more than the judge. And we would certainly not argue that that's the case. But the attorney's job is to advance positions that benefit his client even if the court doesn't ultimately adopt those positions. And here there was an existing circuit split at least as whether a conviction for assault and battery constitutes a crime of violence under the residual clause of the career offender enhancement. The Seventh Circuit in Evans in a published decision in 2009 declared that, and this is all one quote, it's putting together two quotes, but all from Evans, a battery that consists merely of deliberately spitting on someone is not comparable to burglary, arson, extortion, or a crime involving the use of explosives, nor could it be said to present a serious risk of physical injury. The crime, the state crime here was spitting on the police officer? In the Seventh Circuit case, Your Honor? No, in this case. In this case the state crime was for assault and battery of a police officer. And the government seemed to distinguish that from plain assault and battery. Your Honor, the government is... It is an additional element. Yes, Your Honor, my understanding is that the government is saying that there was no case holding that an assault and battery of a police officer before the time of the sentencing hearing is not a crime of violence. Do you disagree with that? I don't disagree with that, Your Honor, but there was case law in this circuit, in the Supreme Court, and in other circuits that bore on whether any kind of an assault and battery can qualify as a crime of violence. And counsel here chose to cite none of it to the district court. So you're saying that competent counsel would have said it makes no difference that the person was a police officer? Your Honor, I believe that... It is a different crime, is it not? There are different elements. There is a singular element in assault and battery on a police officer that does not appear in other forms of assault. Yes, Your Honor. So why does counsel get held to make that argument? Your Honor, because these cases show that an assault and battery normally is not a crime of violence. If the government were to argue that the fact of a police officer victim changes the analysis, then the government should make that argument. But it's the counsel's responsibility to advance the case law that supports his client's case, and that's not what happened here. Counsel also said that there was, quote, no arguable legal basis for counsel to have raised the argument at the time of the sentencing hearing. But this court found in favor of my client on direct appeal on the question of whether there was error in this very same case. There had only been one intervening change in case law that counsel cites between the time of the sentencing hearing and the direct appeal. And when you read this court's previous opinion, it shows that that opinion factored minorly into the analysis. It essentially says that it helps confirm the conclusion. It didn't cite that case in coming to the actual conclusion that there was error. Now, is your position that the state of the record is that it was a crime of violence? Yes, Your Honor. It did. Okay. And this court in the present posture... Where in the record precisely are you relying? The exchange at JA 43 to 44, where he says that any argument on this basis would have been without merit. And this court, I want to point out in this... And there's no objection in his memorandum objecting to the PSR either, is there? No, Your Honor. There is one objection in the memorandum objecting to the PSR, but what it's saying is that the PSR should have applied the Post-Fair Sentencing Act amendments. But the actual sentencing memorandum and the sentencing hearing transcript show that those amendments made no difference in this case. And so counsel effectively raised no objections to the PSR, which just goes to show why it was ineffective assistance not to raise this point on a very... We have to look at the objections to the PSR taken together with the sentencing hearing. Your Honor, I think it would be appropriate for this court to do so. It's hard to imagine a situation where not raising the kind of strong argument that he could have raised on such an important enhancement would not qualify as an effective assistance. I also want to point out that under this court's decision in Point Dexter, under the present posture of this case, the court is required to view the record in the light most favorable to Mr. Carthorne. And to the extent that counsel's arguments don't comport with that standard, the court is required to review the record in that light. I also wanted to address a question from Judge Motz earlier about the standards on plain error versus collateral review. The fact that this case was reviewed for a plain error was directly related to the attorney's failure to object. And that was attributable to Mr. Carthorne on direct appeal because that's how it works. But here on collateral review for ineffective assistance, the whole point is to evaluate the attorney's performance as an attorney. And the last thing I'd like to do is to just respond to Judge Motz's question, and I might go over time on this if that's okay, but about what the particular legal errors were in those three Supreme Court cases. And I would acknowledge that the errors themselves are not particularly close to the error in this case, but it does go to show that ineffective assistance can and often in the Supreme Court is based on an error of law. So in Kimmelman v. Morris, these are direct quotes. The court said, "...counsel's failure to request discovery was not based on strategy, but on counsel's mistaken beliefs that the court was obliged..." And you told us about that. Yes, that's the one that I told you about. So then in Williams v. Taylor, the court said, "...counsel failed to conduct an investigation that would have uncovered extensive records graphically describing Williams's nightmarish childhood, not because of any strategic calculation, but because they incorrectly thought that state law barred access to such records." And in Hinton v. Alabama, the court said, "...the trial attorney's failure to request additional funding in order to replace an expert he knew to be inadequate because he mistakenly believed that he had received all he could get under Alabama law constituted deficient performance." And the court in Hinton also said that "...an attorney's ignorance of a point of law that is fundamental to his case, combined with his failure to perform basic research on that point, is a quintessential example of unreasonable performance under Strickland." I'm not sure any of those are real, as you acknowledged very close. Anyway, thank you very much. You're welcome. Thank you. If I may conclude that Mr. Carthorne would ask this court to reverse and remand for resentencing without the career offender enhancement or in the alternative to vacate the judgment below and remand for the court to hold an evidentiary hearing and to apply the correct legal standard. Thank you, Your Honors. Ms. Cracker, I understand that you're court-appointed, is that correct? Yes. We very much appreciate your efforts with your client. You did a superb job, as did the government. This was, as far as I'm concerned, a model oral argument. Thank you, Your Honor. Too bad we don't have a bunch of law students here. We will come down and greet the lawyers and then go to the next gate.
judges: Diana Gribbon Motz, Barbara Milano Keenan, Stephanie D. Thacker